The opinion of the court was delivered by
Watkins, J.
This suit has for object the annulment of the will of the decedent, Mrs. DeGruy, upon the following grounds, to-wit:
1. That one of the witnesses to the testament, Mr. Wilbrug Huguet, did not hear the dictation of the testatrix because of the indistinctness of her articulation when speaking to the notary.
2. That another of the witnesses, James Rostrup, was totally ignorant of the French language, in which the testatrix partially dictated same.
3. That, as the testatrix partially dictated the testament in the French language, which the notary did not understand, the services of an interpreter were called into requisition.
4. That the clause in the body of the will dispensing the executor from giving bond was not dictated by the testatrix to the notary in the presence of the witnesses.
5. That the instrument was not voluntarily dictated by the testatrix, but its provisions were suggested to her — she merely acquiescing therein by monosyllables.
The answer of the defendants — the forced heirs, legatees and testamentary executor having been made parties — was a general and special denial. After hearing and considering the testimony of a number of witnesses, and amongst them that of the notary and the three attesting witnesses, the District Judge reached the conclusion that plaintiff’s case was not made out and rejected her demands, and maintained the will as legal and valid.
We have read the briefs with care and attentively examined all the evidence, and both briefs and evidence have impressed our minds with the correctness of the conclusions of the judge a quo. *1415 This is the case of an old lady making a will in the nuncupative form by public act, while in extremis lying on her death bed, and manifestly suffering great pain, though perfectly rational and conscious of her acts.
The first two grounds may be disposed of with the simple statement that the subscribing witness Huguet, as a witness in this case, said that he “ could hardly hear her talking because she was very sick;” and although the subscribing witness Rostrup could not speak a word of French, the will purported to have been dictated in English, and is wholly written in that language. Each of these subscribing witnesses signed the testament, and, on the stand as witnesses, do not disavow their signatures. These facts thoroughly dispose of these two grounds of complaint.
With regard to the third ground there is quite a contrariety of statement, the preponderance of which, however, favors the defendants’ theory — the substance of the testimony being that the testatrix dictated her wishes in broken English, which was understood by the notary and subscribing witnesses, and was by the notary correctly expressed in the testament.
Five of the witnesses testifying in this case unite in making the statement that the testatrix dictated her will in broken English, but did it understanding^ and intelligibly.
The notary testifies that the ■ entire dictation of the testatrix was in English, but that he had occasion to make a pause now and then, and repeat to her some of the words and inquire what she meant, and to his questions she would reply: “Yes, that is correct.”
He states, emphatically, that he took the dictation of the testatrix only, and after writing each paragraph he read it over to her, in order to make sure that he was right.
The notary could neither speak nor write the French language, and the testament is in the record — brought up in the original— and is wholly written in the English language.
There is not one of the witnesses who states that the testatrix could not speak the English language, except the plaintiff; and in this she is contradicted by her sister, Mrs. Henry A. Ha,rvey. On this subject the record says:
“Q. Mrs. Harvey, you are a daughter of Mrs. DeGruy?
“A. Yes, sir.
“Q. You were present at the time of the taking of her will by William J. McOune, the notary?
*1416 :<A. Yes, sir; I was.
“Q,. Did your mother speak English or French?
“A. English.
“Q. How did she speak English?
“A. Broken English.
“ Q. Sufficiently well to be understood?
“ A. Everybody always understood her.”
Again:
“ Q,. And Mr. McOune repeated it to your mother?
“ A. Yes, sir. .
“ Q. Your mother spoke broken English?
“ A. Yes, sir.
“ Q. Did she speak it frequently?
“ A. All of the time. We' always had ladies that came to the house that spoke English.”
The plaintiff, as a witness, is contradicted by her brother, Horace DeGruy. On this subject the record says:
“ Q. Mr. DeGruy are you a son of Mrs. Onezime DeGruy that lately died?
“ A. Yes, sir.
“ Q. How many languages could your mother speak?
“ A. She could speak French and broken English.
<[ Q,. Did she speak broken English in such a way that you could understand what she was saying?
“ A. She could speak good enough for anybody to understand her.”
These positive statements are confirmed by several witnesses who had been intimately acquainted with the testatrix many years.
The judge a quo, in our opinion, satisfactorily disposes of the fifth complaint of the plaintiff, to the effect “ that the testament was not voluntarily dictated by the testatrix, but its provisions were suggested to her, she merely acquiescing in monosyllables.” On this subject his judgment declares:
“ That if, as alleged in the petition, the will was not written down by the notary in the very words dictated to him by the testatrix, the evidence goes to show that the plaintiff herself was the only party who offered to explain to the notary what was said to him by the testatrix; (but) that the notary did put down all of her intentions as expressed by her, with a due regard to identity of thoughts and not of words. 6 New Series, 146; 32 An. 11.”
*1417 The foregoing expressions embody our views fully. With reference to the phrase in the will appointing an executor and dispensing him from bond, the charge that it was not dictated by the testatrix, is not supported by the evidence; it does not overcome the sanctity that attaches to a gwasi-official record, and the legal presumption that is thereon raised in favor of the truthfulness of its recitals, and the just performance of an official act by a public officer.
Judgment affirmed.