HAMITER, Justice.
 

 In the succession proceedings of Dreux Angers, whose death occurred on April 12, 1939, there were filed two wills allegedly made by him. One was an olographic
 
 *191
 
 testament dated October 1, 1938; the other was mystic in form and carried the date of April
 
 9,
 
 1939.
 

 On June 7, 1939, Hewitt Angers, a brother of decedent, presented a petition to the district court alleging that “the mystic will was written on April 9th, 1939, at a time when the testator was so weak and so under the influence of narcotics, as to be unable to write or dictate his said will, and unable to write or sign his name thereto.” He prayed that “there be judgment herein declaring the mystic will herein filed on the 19th day of April, 1939, and the judgment homologating it, null and void and ordered stricken from the judicial records of this court * *
 

 Elward Wright, the duly confirmed and qualified testamentary executor, answered the petition with a denial of the mentioned charges; and, on the issues created by the petition and answer, a trial was had.
 

 There was judgment rejecting the nullity demands of petitioner, and from it he is prosecuting this appeal.
 

 As stated by counsel for appellant, in his argument before this court, the controversy presents only the question of fact of whether the testator was mentally competent on April 9, 1939, the date of the mystic will.
 

 The record discloses that Dreux Angers, for many months prior to his death, suffered from the dreaded disease of cancer of the prostate. On April 2, 1939, he was placed in the Ellender Memorial Hospital at Houma, Louisiana, where sedatives were administered to him rather liberally with the view and primary purpose of providing as much comfort as possible. There he died ten days later, or on April 12, 1939.
 

 Meanwhile on April 9, 1939, decedent sent for Elward Wright and requested the preparation of the mystic will now being assailed. Wright drafted the instrument as directed and read it to decedent. After certain corrections were made and discussions had, which are hereinafter mentioned, the will was signed and placed in a sealed envelope. The testator then handed the envelope to a notary public, in the presence of five witnesses; and he stated, as the notary attests, that it “contains his last will and testament, written by another person than himself, by his direction, and then signed by him with his own hand.” Following such delivery, an act of superscription was written on the envelope by the notary, and it was signed by the testator, the five witnesses and the notary.
 

 Appellant, in connection with his contention that decedent lacked testamentary capacity on April 9, 1939, directs attention to the numerous doses of sedatives (sodium amatol, luminal of sodium, phenobarbital, codeine, and morphine) that were given to decedent during the ten days’ stay at the hospital; and he says that “the effect of same on the patient’s mentality and reasoning power may readily be imagined.” As to the morphine, which is recognized to be a very potent drug, the attending physician stated that “he may have had a dose or two, but morphine was not really given to Mr. Dreux until the very last day or two of his life.” When asked if the “sickness or the amount of narcotics he received
 
 *193
 
 would have his mind wandering”, the doctor testified:
 

 “No. Sedatives he took you could take them daily and go about your business. Certainly on some occasions he may have been given a little bit more, but they are the type of sedatives people take frequently who are up and about.”
 

 Further, reliance is placed by appellant on the testimony of certain friends and relatives to the effect that they visited decedent while at the hospital, and they noticed that he failed to recognize them, suffered hiccoughs, was very weak, and that his mind appeared to be wandering. But the attending physician, on the other hand, spoke of his condition as follows:
 

 “Q. How would you describe his mental condition? A. He was a very ill man and a man who, as we mentioned just now, was suffering, but Mr. Dreux’s mind was remarkably clear. I would say his mind was as clear as yours and mine this morning.
 

 “Q. Would that be true for a period of several hours prior to the execution of that will as well as at the time of the execution of the will? A. Well, for days. Up until that time it had been always that way.
 

 “Q. You would say that was true at the particular time that he executed that will, doctor? A. Yes and beyond that time.”
 

 Moreover, we find in the act of superscription, signed by the five witnesses and notary, this enlightening statement:
 

 “Personally came and appeared Dreux Angers, a single man of lawful age, residing in the Parish of Terrebonne, State of Louisiana,
 
 ill in body, but of sound and disposing mind, as he appeared to the said named five witnesses and me, Notary,
 
 * * (Italics ours.)
 

 Finally, to quote from the brief of his counsel, appellant argues:
 

 “If any further evidence be desired as to the testator’s mental incompetency on April 9th, 1939, we need only refer to the mystic will itself which shows the following four glaring errors:
 

 “1. Testator described his real estate as being on the left descending bank of Bayou Little Caillou, when, as a matter of fact, same is on the right descending bank of said bayou.
 

 “2. In the will as originally written, testator described certain beneficiaries as being the ‘daughters’ of Hubert N. Belanger, when, in fact, these beneficiaries with whom he was well acquainted, are a boy and a girl.
 

 “3. He makes a bequest to his brother, Hewitt Belanger, when, in fact, Hewitt Belanger is his cousin, and his only brother is Hewitt Angers.
 

 “4. Signature: Look at the clear bold signature on the olographic will of October 1st, 1938, and compare same to the illegible scratch affixed to the Mystic Will on April 9th, 1939. This comparison eloquently proclaims the complete physical and mental collapse of the testator.”
 

 The first stated reference, i.e., the giving of an incorrect location of his real estate, is not necessarily indicative of mental deficiency. Errors of this kind are frequently made by persons having normal minds.
 

 
 *195
 
 Respecting the mistake in describing the children of Hubert N. Belanger, Elward Wright, the testator’s amanuensis, testified :
 

 “Q. Did he tell you the children of Hubert N. Belanger or the daughters of Hubert
 
 N.
 
 Belanger? A. I understood him when he was telling me to write the will to say two daughters. When I read the will to him and he went over it after I had written down all of his bequests he said no, you are wrong, Hubert doesn’t have two daughters, he has two children, a boy and a girl.”
 

 This mistake could have resulted from a misunderstanding on Wright’s part. But be that as it may, the fact that the testator noticed the inaccuracy when the will was read to him and directed its correction argues strongly in favor of his enjoying mental competency at the time.
 

 The reference to his brother, Hewitt Angers, as Hewitt Belanger, is obviously an error on the part of Wright. On this point, the latter testified:
 

 “Q. Did he tell you to call his brother Hewitt Belanger? A. I would say no.
 

 “Q. You would say no? A. I would say no. Belanger and Angers sound very similar.
 

 “Q. This, then is a mistake of yours? A. I would presume so.”
 

 A comparison of the bold, clear signature on the olographic will of October 1, 1938, with the “illegible scratch” on the mystic will of April 9, 1939, does not “eloquently proclaim”, as is contended, the complete “mental collapse” of the testator on the date last named. He was then a very sick and weak person physically; he was “ill in body”. This condition, along with the circumstance that he signed the will while lying in bed, could have been the sole cause of his faulty signature.
 

 Our thorough and careful study of all of - the evidence adduced in this dispute does not leave us with the conviction that manifest error was committed by the trial court in resolving the question of fact in favor of the validity of the mystic will.
 

 Therefore, for the reasons assigned, the judgment is affirmed.