SAVOY, Judge
Plaintiff has appealed from a judgment decreeing a nuncupative will and testament by private act to be valid.
Plaintiff, the sister of Bythella Haynes Fisher, filed a suit to set aside and annul a will executed by her sister on March 12, 1959, in nuncupative form by private act, on the grounds (1) that the testatrix was of unsound mind when the will was made and lacked testamentary capacity, and, there *35 fore, the testament was null and void; and (2) that the testament was executed by the testatrix because of undue influence by the said special legatee, trustee and testamentary executor of the said will, Hugh Marion Broussard.
The record reveals that the testatrix died on the 20th day of February, 1960; that her will was admitted to probate on March 25, 1960; and, that Hugh Marion Broussard qualified as testamentary executor of decedent’s last will and testament. Approximately a year later plaintiff filed the instant suit to declare the last will and testament of her sister null and void for the reasons stated herein.
The husband of the testatrix predeceased her, and she left no ascendants or descendants, but left as collateral heirs her sister and nieces. At the time of her death, the testatrix was in her eighties. She had the usual infirmities of a person that age and was nearly blind. The record reveals also that she was eccentric, was untidy, and lived alone.
In 1957 the testatrix had executed a last will and testament in the nuncupative form by public act. In this will plaintiff was not included as an heir.
In 1959 testatrix consulted Mr. Edward G. Burleigh, an attorney at law practicing in the Parish of St. Landry, Opelousas, Louisiana, and stated that she desired to have him prepare for her her last will and testament. Mr. Burleigh, who testified in the instant case, stated that the testatrix desired to name in her will certain children of a niece, but that she desired that the husband of the niece be unable to receive the funds which were to accrue to the children for the reason that she did not trust his business judgment. Mr. Burleigh replied that he would prepare a will whereby a trust would be created for the children, but that it would take some time to do so. He testified that the testatrix also stated that she desired that Hugh Marion Broussard be allowed to lease a portion of the real estate which she owned for a nominal sum since he had helped her in the past and at the present time. Mr. Burleigh stated that because of the fact that the trust would end some time in the future, it might be better that she grant to Broussard the usufruct of the property for his lifetime. He stated further that he prepared a rough draft of the instant will, and that the testatrix made several trips from her home in Evergreen, Avoyelles Parish, Louisiana, to Opelousas before the will was finally confected and executed by her.
The Court will consider the contentions advanced by counsel for appellant in brief and oral argument before this Court in the order presented therein.
The first ground for annulling the will is that the testatrix was of unsound mind and lacked testamentary capacity at the time she executed the will in the instant case on March 12, 1959. Counsel for appellant rely principally on the case of Cormeier v. Myers, 223 La. 259, 65 So.2d 345. This Court is of the opinion that the Cormeier case, supra, is distinguishable from the case at bar for in that case the court found that the testatrix was illiterate, spoke very little English, had for a number of years experienced mental deterioration which continued and became progressively worse until her death; that for several years prior to her death, she could not recognize friends or relatives, and could not feed or dress herself.
In the instant case, while it is true that the testatrix was eccentric and feeble, we agree with the findings of the trial judge that at the time the will was executed by her, there was no evidence of testamentary incapacity or mental weakness.
The only medical testimony in the record is that of Dr. C. A. Havard. The doctor testified that he saw the testatrix on twelve or thirteen occasions commencing in 1945 and including the last visit which he made at her home on October 8, 1959. He *36 stated that on these various occasions she complained of a bladder disturbance, arthritis, irritation of the eye, lack of circulation, and general physical weakness. He also stated that he did not detect any change in her mental condition; that her mental condition was below average; and that he was of the opinion at the time of his last visit that she was mentally capable of making and executing a last will and testament. He also stated that she was peculiar and thought that people wanted her money; that she was of the opinion certain gentlemen wanted to court her for her money; and that she was suspicious of people.
In the Succession of Pizzati, 218 La. 549, 50 So.2d 189, the court stated that testamentary capacity is always presumed, and that the testator is presumed to be sane until the contrary is affirmatively established. In the Pizzati case, supra, the court found that the testatrix did many peculiar things, appeared to suffer from hallucinations, appeared to be extremely forgetful and absent minded in routing matters and transactions; and was unable to care for herself in her physical needs. One of her attorneys testified he did not think she had testamentary capacity to execute a will. In spite of this holding, the court maintained the validity of the will made by the testatrix.
This Court concludes, as did the trial judge, that at the time the testatrix executed the will in the instant case, she had the mental capacity to do so.
The Court will next consider the contention of counsel for appellant that the testatrix executed the will because of the undue influence exercised by Hugh Marion Brous-sard.
The evidence reveals that Broussard leased certain real estate from the testatrix; that he had leased the same property from her husband while he was living. He was on friendly terms with the testatrix, doing errands and jobs for her around her home, and he visited her frequently. He drove the testatrix in her automobile on three or four occasions.
When the testatrix went to Opelousas, Louisiana, to discuss the making of the instant will with Mr. Burleigh, a highly respected member of the Opelousas, Louisiana Bar, Mr. Burleigh and his secretary testified that Broussard never did enter the private office of Mr. Burleigh whenever he and the testatrix discussed the proposed will. On the day of the execution of the will, Mr. Broussard drove the testatrix to the office of Mr. Burleigh, but when she executed the will, he was not present. Three of the witnesses who were present when the testatrix executed the will testified that she was, in their opinion, of sound mind.
The testimony reveals that the will was explained to her in detail, and she appeared satisfied therewith.
Counsel for appellant contend that Brous-sard promised to marry the testatrix if she would favor him in her will. On the witness stand he denied this, and there was no other evidence introduced to contradict his testimony. He testified that he never did tell the testatrix that he would marry her. The record reveals that Broussard was approximately forty years of age.
We are of the opinion that no undue influence has been proven in this case so as to nullify said last will and testament.
The trial judge, in his written opinion, analyzed the testimony of all of the witnesses and concluded that appellant had failed to sustain the great burden imposed on her in order to annul said will. After a reading of this lengthy record, we are in accord with his findings of fact.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s costs.
Affirmed.