SAVOY, Judge.
. This case is on appeal by defendants who unsuccessfully opposed the probating of a will made by the late Mrs. Thomas B. Franks, nee Augusta Virginia Perkins, who departed this life at her domicile in Cal-casieu Parish, Louisiana, on June 14, 1963. The disputed will was executed on March 13, 1963. Mrs. W. A. Midkiff, a particular *447 legatee under the terms of the said will, intervened in the suit in the district court, praying that the will and the bequest to her be held valid.
The contested-will was prepared by Mr. Joseph James Regan, an attorney at law and Notary Public who resides at Sulphur, Louisiana. Sulphur was also- the residence of Mrs. Franks.
The will in the instant case was prepared under the provisions of LSA-R.S. 9:2442 et seq. The above provisions of the law allow a testator or testatrix an additional method of making a will in this State.
The attorney for opponents sets out five (5) grounds for invalidating the Franks will:
“(1) The purported testator did not sign said document, or sign it on each separate sheet of the instrument or in the presence of the Notary and two witnesses nor did she declare it to be her last will and testament in the presence of the Notary and two witnesses.
“(2) Said Notary Public did not sign said instrument at the end of the will in the presence of the testator and in the presence of two witnesses.
"(3) Said witnesses did not sign at the end of the will in the presence of the testator and in the presence of each other.
“(4) The said will does not contain recitations necessary for its validity.
“(5) At the time the will was purportedly executed, the deceased did not have the necessary capacity to malee a will nor was she able to read as required by Louisiana Revised Statutes 9:2443.”
LSA-R.S. 9:2442 and LSA-R.S. 9:2443 provide the following:
LSA-R.S. 9:2442. “In addition to the methods provided in the Louisiana Civil Code, a will shall be valid if in writing (whether typewritten, printed, mimeographed, or written in any other manner), and signed by the testator in the-presence of a notary public and two-witnesses in the following manner:
“(1) Testator. In the presence of the-notary and both witnesses the testator shall signify to them that the instrument is his will and shall sign each-separate sheet of the instrument.
“(2) Notary public and witnesses. The-notary and both witnesses must sign at the end of the will
“(a) In the presence of the testator, and
“(b) In the presence of each other.
“(3) The foregoing facts shall be evidenced in writing above the signatures of the notary public and witnesses and the testator at the end of the will. Such declaration may be in the following form or a form substantially similar thereto:
“(a) Signed (on each page) and declared by testator above named, in. our presence to be his last will and testament, and in the presence of the-testator and each other we have hereunto subscribed our names on this-- - day of - 19-
LSA-R.S. 9:2443. “Those who know' not how or are not able to read, cannot: make dispositions in the form of the-will provided for in R.S. 9:2442.”
After reviewing the evidence, this Court concludes that the Notary Public complied with all of the requirements necessary for a valid statutory will.
The most strenuous argument made by able counsel for opponents is that at the time of making the will, Mrs. Franks was of unsound mind; that she lacked the testamentary capacity to execute said will; and, therefore, she was incompetent to make. a valid will.
Counsel for opponents relies principally on the case of Cormier v. Myers, 223 La. *448 259, 65 So.2d 345, in support of the above stated contention, namely, mental incompetence.
In the recent case of Miles v. Broussard (La.App., 3 Cir., 1964), 166 So.2d 34, decided by this Court on June 24, 1964, the same argument was made by counsel as was made by counsel in the instant case. In connection with the Cormier case, supra, this Court made the folio-wing statement in Miles v. Broussard, supra:
“The first ground for annulling the will is that the testatrix was of unsound mind and lacked testamentary capacity at the time she executed the will in the instant case on March 12, 1959. Counsel for appellant rely principally on the case of Cormier v. Myers, 223 La. 259, 65 So.2d 345. This Court is of the opinion that the Cormier case, supra, is distinguishable from the case at bar for in that case the court found that the testatrix was illiterate, spoke very little English, had for a number of years experienced mental deterioration which continued and became progressively worse until her death; that for several years prior to her death, she could not recognize friends or relatives, and could not feed or dress herself.”
In the Miles case, supra, this Court also made the following observation, to-wit:
“In the Succession of Pizzati, 218 La. 549, 50 So.2d 189, the court stated that testamentary capacity is always presumed, and that the testator is presumed to be sane until the contrary is affirmatively established. In the Piz-zati case, supra, the court found that the testatrix did many peculiar things, ■appeared to suffer from hallucinations, ■appeared to be extremely forgetful and .absent minded in routine matters and transactions; and was unable to care for herself in her physical needs. One ■of her attorneys testified he did not think she had testamentary capacity to •execute a will. In spite of this holding, the court maintained the validity of the will made by the testatrix.”
In the instant case there was much testimony, medical and lay, concerning Mrs. Franks’ mental condition at the time of executing the instant will. After analyzing all of said evidence, this Court agrees with the finding of the trial judge that at the time Mrs. Franks executed the will on March 13, 1963, there was no evidence of testamentary incapacity or mental weakness. It is true that the record reveals Mrs. Franks was hard of hearing, could not see as well as she had in previous years, had suffered from a siege of shingles which affected one of her eyes, was eccentric and feeble and had hardening of the arteries; however, we do not think the above infirmities are sufficient grounds for invalidating the will.
As to the factual contention that Mrs. Franks could no longer read when the will was confected, we think that, for the reasons stated by the trial court, the evidence preponderates in support of the trial court’s conclusion that the decedent knew how and was able to read at the time the will was made.
The last contention made by coitnsel for opponents is that Mrs. Midkiff cannot receive her legacy in this will because to do so would be in contravention of LSA-C.C. Article 1489. This article provides the following :
“Doctors of physic or surgeons, who have professionally attended a person during the sickness of which he dies, can not receive any benefit from donations inter vivos or mortis causa made in their favor by the sick person during that sickness. To this, however, there are the following exceptions:
“1. Remunerative dispositions made on a particular account, regard being had to the means of the disposer and to the services rendered.
“2. Universal disposition in case of consanguinity.
*449 “The same rules are observed with regard to ministers of religious worship.”
Mrs. Midkiff was a neighbor upon whom Mrs. Franks depended heavily during the last few months of her life. This Court is of the opinion that Mrs. Midkiff does not fall in any of the classifications set forth in Article 1489 excluded from receiving donations mortis causa.
In the Succession of Willis (La.App., 2 Cir., 1963), 149 So.2d 218, cert. den., the court, in discussing LSA-C.C. Article 1489, held that a registered nurse, who was a residual legatee in a last will and testament, did not fall within the provisions of Article 1489.
For the reasons assigned, the judgment of the district court is affirmed at appellants’ costs.
Affirmed.